Good morning, Your Honors. Good morning. My name is Frank Brantill. I represent Mr. Joseph, who has been convicted of murder. Our system of justice presumes that the adversarial testing will promote the public interest in truth and fairness. When there is no adversarial testing, the result must be deemed unreliable as a matter of law. Polk County v. Dodson, United States v. Cronick. In this case, Mr. Joseph was denied his constitutional rights to present a defense and a fair trial because of the instructional errors that occurred. Before I go further, I'd like to reserve about three minutes. Try to keep track of that yourself. I will try to help you. Thank you. In this case, there was a sudden quarrel. My client used profanity and flipped off the victim who then broke from his friends and attacked my client. And in the process, my client went to the ground, was being kicked and punched, was in fear of his life. He drew a knife and stabbed him. Prior to that, he even warned this individual, leave him alone. Now, the problem with the case is the jury was instructed that self-defense or imperfect self-defense is not available if the defendant was guilty of wrongful conduct. And also the court failed to instruct that battery cannot be justified because someone used bad words or profanity. So because of those errors, my client was deprived his right to present the fact that he was acting in self-defense or imperfect self-defense. And I think deprived of the right to present anything. You're saying that the jury was given the wrong information as to the circumstances under which he could be convicted. But he wasn't prevented from presenting any evidence. No, but he was present. He was prevented from presenting the defense if the if the instructions were improper. And what good is the evidence if there's no instruction? And that's what happened here. I think I pretty much covered it in my briefs. Well, let me ask you this. Didn't your client admit on the stand that he had told the sheriff's officer? I think it was that he first stabbed the victim. If he was a victim when he was when he was standing and then the victim fell to the ground and he then stabbed him several times while he was lying on the ground. Yes, that's true, Your Honor. But he also testified differently. So, I mean, that's something for the jury to decide. And when they're not properly instructed on what are the elements that here. What was his explanation of why he said that to the sheriff? I don't I don't know if there was any explanation. I was just an inconsistent statement. But that's a lot different story from what you tell us about how he was the one on the ground and was being attacked. Right. Well, he was attacked and he did go to the ground. And that's what the district judge went to the ground on top of the victim stabbing. Well, you know, if he had no right to if he used excessive force, then we're talking about manslaughter here. And really, that's really what this case was about at the worst. I mean, this was a sudden quarrel. It was a lot going on between the two different groups. And there was no time to premeditate and deliberate, obviously. And there was no malice of fourth thought. This was a sudden quarrel. But the problem with the case is the jury wasn't properly instructed and they could have been confused. And in fact, they were. And then there was some uncertified issues that are kind of important, too, that have not been addressed. And those deal with the fact that the jury was told they basically they were left with the impression that they could not consider my client's state of mind with reference to malice. And the foreman himself was having trouble with finding malice. And then there was another problem. Some juror had already made up his mind before even deliberating before deliberations began. So there's a lot of problems with this case. And then the cumulative impact of all of this really deprived Mr. Joseph is of his rights to a fair trial and to present a defense. And so basically, I have nothing further to say unless the court has any other questions. So quietly sit down. Thank you. Thank you. Good morning, Your Honors. Deputy California Deputy Attorney General Alan Tate on behalf of the warden in this case. I'd just like to respond briefly. Petitioner's counsel claims there was absolutely no adversarial testing in this case. The defendant testified in his own defense that the real question is the jury instruction. Right. And the jury instruction, I don't even believe was appropriate in this case. The defendant. And I think it's important to look at the facts. The defendant testified that before he ever pulled the knife out and stabbed anybody, he was being attacked by as many as eight different people. However, he admitted on cross-examination that he told the police officer shortly after his arrest that he was only fighting with the victim, that he knew nobody there had any weapons and that he stabbed the victim approximately two times, then slammed him to the ground and then stabbed him a couple more times. There was never any suggestion by the prosecution that they were merely relying on any gestures or expletives by the defendant in this case that justified any kind of attack by the victim in this case. In fact, the defendant also testified at trial that before there was ever any physical contact, any kicking, any alleged kicking, choking, anything else that he had already brought his knife out, had been waving it around, threatening people to stay back. There were actually, I think, a series of at least verbal confrontations between the various parties involved in this case. So before there was ever any physical contact, he was waving around a knife and making physical threats. But he said that was in self-defense, though. He said there were eight people or so around him and he was waving a knife to keep this group off. That was his claim, yes. And to point out, I mean, clearly the instructions that were given, both the full instructions on self-defense and imperfect self-defense that were given, there's never been any claim that they were incorrect. They're just claiming that the court should have also sua sponte given 16.142. Well, they say that the problem with the self-defense instruction is that they say the instruction says the defense isn't available if the defendant created the circumstances by his unlawful conduct. Well, that's actually. I mean, by his wrongful conduct. That's actually CALJIC 5.17, and that's in conjunction with their claim that the court didn't define what wrongful conduct was. What wrongful conduct? 16.142 states, neither provocative act, which does not amount to a threat or an intent to inflict physical injury, nor words, regardless of how offensive or exasperating, is sufficient to justify a battery. There's no California authority or federal authority that I've found that requires a court to give that instruction sua sponte. And I think it brings us back to more of a fundamental issue here. I think the U.S. Supreme Court has essentially made it clear that a defendant has a constitutional right, an absolute right, to present witnesses or evidence in their defense. But when it comes to instructions, I don't think there's any U.S. Supreme Court authority that requires every instruction on every aspect of a defense. And in this case, there really is no question that the defendants' express defenses in this case were instructed on with standard instructions, and there's never any claim that they were incorrect. At most, they were possibly incomplete. But beyond that, you know, I think 16.142 can cut both ways. It's primarily, I think, an instruction that's required by the prosecution. And in this case, where both people may have been using expletives, it may have actually hurt the defendant to have this instruction given. But anyway, the defense counsel during closing argument did argue, essentially, Petitioner's counsel argued in closing at page 909 that saying expletives to someone does not justify a battery in response. She essentially argued that the verbal statements cannot be wrongful conduct and that the victim was the aggressor. But how does the jury know? A lawyer tells you that flipping somebody off, insulting them, is not wrongful conduct under the terms of the instruction. Well, the jury gets told, don't listen to what the lawyers tell you about the law. So the jurors, some jurors might well think it's wrongful conduct to insult people and provoke them. It certainly would have been better had the other instruction been given. Well, in California, the jurors aren't told to ignore what the attorneys say about the law. The jurors are told to ignore anything that the attorneys say about the law that is inconsistent with the instructions given. Like I say, 16.142 could have possibly benefited the defendant. It also could have hurt them. It could have applied equally to the victim in this case and their essentially mutual arguments leading up to it. What happened is that instruction was omitted and the defense counsel was able to argue that same theory or that same principle, but only as it benefited the defendant in this case. And I think that also goes to the IAC claim why the instruction might not have been given. And generally, I think this is an instruction that would be requested by the prosecution. This was kind of an unusual set of circumstances in this case, which might suggest that the defendant could have wanted it. But, again, I think what we have to go back to, I don't think there, you know, the whole question here is whether the California court's rejection of this claim is inconsistent with U.S. Supreme Court authority. And, again, to the extent that even U.S. Supreme Court authority says there is a constitutional right to jury instructions on defenses, and I think that's really not clear. There's absolutely no U.S. Supreme Court authority that requires pinpoint jury instructions on every aspect of a defense, especially when the instructions given were correct, when there was no limitation on the evidence presented, on the witnesses called, and no limitation on the arguments made. So I think for all those reasons, I don't believe there's constitutional error here. To the extent there is, because of the instructions given that had to have been considered by the jury, it could not have caused any harm. And I think for all the reasons that I've argued previously, there could not have been any prejudice as a result of not either requesting this instruction, or either one of these instructions, or by raising these issues on appeal. Unless there's any additional questions by the court, the warden would be happy to submit. Thank you, counsel. Thank you. Well, you know, you have a difficult burden to overcome in Edward. Not as difficult as the California Attorney General might think. Yes. But still a difficult burden under Edward. Yes, Your Honor. So you have to show that not only was the decision by the State court in error constitutionally, but that it's contrary to a clearly established Supreme Court decision. Right. It's an unreasonable application of Supreme Court law. That's not an insuperable burden, but it's a heavy burden. Yes, Your Honor. So it's not enough to show that there was an error. Well, Your Honor, I don't think there was any ruling by the State court with reference to our argument that wrongful conduct wasn't defined, or that provocative words cannot justify an attack. And so I don't know of any ruling. So that burden is gone. No, I think the other burden is to the State has actually the burden that this error did not affect the verdict. And I can't see how the court can be convinced that it did not because this basically these errors went to his defense. Counsel, if there is no State court decision, we still have to determine whether or not the decision was objectively unreasonable. Right. So we don't really start with a clean slate. We still have to look at whether or not we don't do a de novo review. Right. We look to see whether or not it's objectively unreasonable. You look to Supreme Court law to see if it is. And there is plenty of Supreme Court law supporting the position that the defendant has a right to instructions on his defense. And that's where the problem is. The problem you have with that is that the jury was instructed on self-defense. Yes, but it was incorrectly defined, instructed on it. What you're asking us to rule is that the court had a duty to sua sponte, give an instruction. It would be a different matter if you had posed an instruction and the court didn't give it. But you're asking us to say that it was objectively unreasonable for the court not to sua sponte, give an instruction. Well, under California law, which we have to follow, the court is required to follow Supreme Court law. State law is controlling with reference to what instructions should be given. And state law requires a sua sponte instruction on general principles of law. And there's plenty of Supreme Court cases that say the same thing. Counsel, what's your case authority for the proposition that in a habeas case we are governed by state law? State law defines the instructions. That's all I'm saying. Now, Supreme Court law is obviously what we're bound by. And there's plenty of Supreme Court precedent that says the defendant has a right to an instruction on his defense. Not sua sponte. What case authority are you relying upon from the Supreme Court that says a trial judge has to give an instruction sua sponte? Well, I don't know if there's any Supreme Court case law, but there's plenty of Supreme Court case laws that says that a jury must be adequately instructed. And that wasn't what happened here. The jury was not adequately instructed because of the confusion that occurred on this wrongful conduct. Now, the Cal JIC instruction, it should have been modified. It didn't have the basic principle there is that words, gestures, provocative conduct cannot justify an attack. And the jury wasn't told that. So those are pretty substantially areas of the law that the jury was not instructed on. And therefore, the adversarial testing broke down. And that's what the problem with the case is. And there's plenty of cases that deal with that. So, I mean, the judge has a duty. Due process requires this. The right to present a defense requires this. And it didn't happen. And there was confusion. And so this is really an unfair verdict here. And this Court should not be convinced that those instructional errors did not affect the verdict. It did. And I would respectfully ask the Court to reverse the conviction. Thank you. Thank you, Your Honor. Counsel, just to be clear, my reference to the California Attorney General was not to you. It was to Mr. Locke. Feel free to convey that to him. Case just arguably submitted.
judges: Reinhardt, Rawlinson, Fogel